**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

U. S. SECURITIES AND EXCHANGE
COMMISSION,

               Plaintiff,

    vs.

CHARLES E. JONES,

            Defendant.

Case No. 5:24-cv-1560

JUDGE J. PHILIP CALABRESE

MAGISTRATE JUDGE JENNIFER
DOWDELL ARMSTRONG

**REPLY IN SUPPORT OF DEFENDANT CHARLES E. JONES'S MOTION TO DISMISS**

Carole S. Rendon (0070345)
Daniel R. Warren (0054595)
Douglas L. Shively (0094065)
Rachael L. Israel (0072772)
Tera N. Coleman (0090544)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: 216-621-0200
Facsimile: 216-696-0740
Email: crendon@bakerlaw.com
Email: dwarren@bakerlaw.com
Email: dshively@bakerlaw.com
Email: risrael@bakerlaw.com
Email: tcoleman@bakerlaw.com

Jonathan R. Barr (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW Suite 1100
Washington, D.C. 20036
Telephone: 202-861-1500
Facsimile: 202-861-1783
Email: jbarr@bakerlaw.com

*Attorneys for Defendant Charles E. Jones*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      Chief Judge Marbley's Order Does Not Preclude Dismissal ............................................. 2

II.     The SEC Cannot Rely On FirstEnergy's DPA ................................................................. 4

III.    The SEC Fails to Allege Securities Fraud (Counts I and II) ............................................ 7

       A.      The SEC Does Not Allege A False Or Misleading Statement .............................. 7

       B.      The SEC Fails to Allege the Underlying Bribery Scheme ................................. 12

       C.      The SEC Fails to Plead Scienter .................................................................. 14

       D.      The SEC Fails to Plead Scheme Liability ......................................................... 15

       E.      The SEC Does Not Plead A Material Omission Theory ...................................... 18

IV.    The Court Should Apply Rule 13a-14 As Written and Dismiss Count III ...................... 18

V.     The SEC Fails to Adequately Plead Count IV ............................................................... 20

VI.    The SEC's Aiding and Abetting Counts Fail ................................................................. 21

CONCLUSION ..................................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abramson v. NewLink Genetics Corp.*,
  965 F.3d 165 (2d Cir. 2020)..................................................................8

*Adams v. Standard Knitting Mills*,
  623 F.2d 422 (6th Cir. 1980) ...............................................................16

*Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*,
  532 F. Supp. 3d 189 (E.D. Pa. 2021) .....................................................9

*American Postal Workers Union Columbus Area Local AFL-CIO v. United States
  Postal Service*,
  736 F.2d 317 (6th Cir. 1984) .................................................................3

*Bates v. Green Farms Condo. Ass'n*,
  958 F.3d 470 (6th Cir. 2020) .................................................................5

*Birgel v. Board of Commissioners of Butler County, Ohio*,
  125 F.3d 948 (6th Cir. 1997) ............................................................2, 3

*In re CarLotz, Inc. SEC. Litig.*,
  2024 WL 3924708 (S.D.N.Y. Aug. 23, 2024).........................................17

*City of Mount Clemens v. EPA*,
  917 F.2d 908 (6th Cir. 1990) .................................................................2

*Doe v. Currey Ingram Acad.*,
  721 F. Supp. 3d 682 (M.D. Tenn. 2024) ................................................5

*Eden Alpha CI LLP v. Polished.com Inc.*,
  2025 WL 296998 (E.D.N.Y. Jan. 24, 2025) .........................................17

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015)..............................................................................21

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)..............................................................................16

*Espy v. J2 Glob., Inc.*,
  99 F.4th 527 (9th Cir. 2024) ................................................................16

*In re FirstEnergy*,
  2022 WL 681320 (S.D. Ohio Mar. 7, 2022)................................... *passim*

*In re Ford Motor Co. Sec. Litig.*,
    381 F.3d 563 (6th Cir. 2004) ........................................................................12

*GMAC Inc. v. Sullivan*,
    2009 WL 10670871 (M.D. Fla. Nov. 23, 2009) ..............................................4

*Golden v. City of Columbus*,
    404 F.3d 950 (6th Cir. 2005) ..........................................................................5

*Guice v. Postmaster Gen.*,
    747 F. App'x 827 (11th Cir. 2018) ..................................................................2

*Jergens v. State Dep't of Rehab. & Corr. Adult Parole Auth.*,
    492 F. App'x 567 (6th Cir. 2012) .................................................................5, 7

*Lilly v. Virginia*,
    527 U.S. 116 (1999) ........................................................................................6

*Lorenzo v. SEC*,
    587 U.S. 71 (2019) ........................................................................................17

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017) ..........................................................17

*Noto v. 22nd Century Grp., Inc.*,
    35 F.4th 95 (2d Cir. 2022) .............................................................................18

*O'Connor v. Kazimer*,
    2021 WL 12303538 (N.D. Ohio June 21, 2021) .............................................5

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ................................................................................8, 9, 10

*Padilla v. Cmty. Health Sys., Inc.*,
    2022 WL 3452318 (M.D. Tenn. Aug. 17, 2022) ...........................................10

*Schor v. Abbott Lab'ys*,
    378 F. Supp. 2d 850 (N.D. Ill. 2005), *aff'd*, 457 F.3d 608 (7th Cir. 2006) .............................2

*SEC v. Brown*,
    740 F. Supp. 2d 148 (D.D.C. 2010) ..............................................................18

*SEC v. Das*,
    2010 WL 4615336 (D. Neb. Nov. 4, 2010) ...................................................22

*SEC v. Das*,
    723 F.3d 943 (8th Cir. 2013) ........................................................................23

*SEC v. Geswein*,
   2011 WL 4541303 (N.D. Ohio Sept. 29, 2011)......................................................21

*SEC v. Geswein*,
   2011 WL 4565898 (N.D. Ohio Aug. 5, 2011) .......................................................22

*SEC v. Healthsouth Corp.*,
   261 F. Supp. 2d 1298 (N.D. Ala. 2003) ................................................................6

*SEC v. Jacoby*,
   2021 WL 351176 (D. Md. Feb. 2, 2021) ...............................................................16

*SEC v. Jensen*,
   835 F.3d 1100 (9th Cir. 2016) .........................................................................20, 21

*SEC v. Rio Tinto PLC*,
   41 F.4th 47 (2d Cir. 2022) ............................................................................16, 17

*SEC v. Sequential Brands Grp., Inc.*,
   2021 WL 4482215 (S.D.N.Y. Sept. 30, 2021)...................................................18, 19

*SEC v. Taronis Techs., Inc.*,
   2023 WL 5625299 (M.D. Fla. Aug. 31, 2023) ........................................................22

*SEC v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) .............................................................................22

*SEC v. Universal Express, Inc.*,
   475 F. Supp. 2d 412 (S.D.N.Y. 2007).....................................................................16

*SEC v. Ustian*,
   229 F. Supp. 3d 739 (N.D. Ill. 2017) ....................................................................10

*SEC v. Warner*,
   652 F. Supp. 647 (S.D. Fla. 1987) ........................................................................18

*Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*,
   2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ...........................................................9

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
   83 F.4th 514 (6th Cir. 2023) ...............................................................................16

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022).....................................................................17

*United States v. Bogart*,
   2014 WL 7507260 (M.D. Pa. Dec. 8, 2014).........................................................3, 4

iv

*United States v. Sanders*,
 95 F.3d 449 (6th Cir. 1996) ..........................................................................................6

*USM Holdings Inc. v. Simon*,
 2016 WL 4396061 (E.D. Mich. Aug. 18, 2016) ...........................................................10

**Statutes**

15 U.S.C. § 78m(b)(2)(B) ...........................................................................................23

Exchange Act Section 13(a) ........................................................................................23

Securities Act Section 17(a) .......................................................................................18

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................................13, 22

Rule 10b-5 ......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...........................................................................................4, 5

Rule 13a-11 ...............................................................................................................23

Rule 13a-14 ........................................................................................................20, 21

Rule 13b2-2 ....................................................................................................21, 22, 23

Rule 12b-20 ...............................................................................................................23

**STATEMENT CERTIFYING COMPLIANCE WITH LOCAL RULE 7.1(f)**

Pursuant to Local Rule 7.1(f), Mr. Jones hereby certifies that this reply brief adheres to the 7,000-word limitation for standard-track cases permitted by the Court's Standing Order on Civil Procedures. The brief contains 6,966 words.

## INTRODUCTION

The SEC's various efforts to respond to Charles Jones's motion to dismiss all fall short. The SEC contends that this Court is bound by Judge Marbley's opinion denying a motion to dismiss in *In re FirstEnergy*, 2022 WL 681320 (S.D. Ohio Mar. 7, 2022). But the Sixth Circuit—in case law the SEC fails to cite—has held that denials of motions to dismiss are not to be given preclusive effect. And Judge Marbley's decision in *In re FirstEnergy* has little bearing here in any event—the complaint in that case was very different and far broader than the SEC's complaint, with many more factual allegations, dozens more statements that were challenged as misleading, and over forty defendants.

The SEC also asks the Court to consider evidence not included in its complaint, including the Deferred Prosecution Agreement that FirstEnergy entered into with the Government. This is all the more improper because admissions by another party to avoid prosecution (as well as a calamitous bank default) are clearly not admissible against Mr. Jones.

Perhaps most importantly, the SEC has limited its challenge to a small handful of statements by Mr. Jones, which for the most part expressed his opinion that FirstEnergy had acted properly and lawfully in making its political contributions. The SEC makes the bizarre argument that these statements were misleading because Mr. Jones knew the Government had a different view, even though the Government had already publicly announced its highly detailed indictment of Larry Householder. Throughout its complaint, the SEC fails to acknowledge the context of Mr. Jones's statements—context which clearly shows that the statements at issue were not misleading and cannot support the SEC's securities fraud claims.

## ARGUMENT

### I.       Chief Judge Marbley's Order Does Not Preclude Dismissal

The SEC argues that Chief Judge Marbley's order denying Mr. Jones's motion to dismiss a different civil complaint has "collateral estoppel and issue preclusion" effect. (Opp. at PageID 153, ECF No. 16.) But the Sixth Circuit has stated clearly that "a denial of a motion to dismiss is not the type of judgment that is given res judicata effect." *City of Mount Clemens v. EPA*, 917 F.2d 908, 915 n.6 (6th Cir. 1990); *see also Guice v. Postmaster Gen.*, 747 F. App'x 827, 829 (11th Cir. 2018) ("[T]he district court's denial without prejudice of the Postmaster General's earlier motion to dismiss Guice's original complaint was no final adjudication on the merits for purposes of triggering res judicata."); *Schor v. Abbott Lab'ys*, 378 F. Supp. 2d 850, 854 (N.D. Ill. 2005) ("Judge Wilken did not hold that defendant was liable under this theory, but only that the plaintiffs in those cases had alleged sufficient facts to survive the motions to dismiss. … Such non-final holdings cannot collaterally estop defendant from advancing similar arguments here."), *aff'd*, 457 F.3d 608 (7th Cir. 2006); *Wright & Miller*, 18A Fed. Prac. & Proc. Juris. § 4439 (3d ed.) ("Denial of a motion to dismiss for failure to state a claim ordinarily is not a final judgment that will support issue preclusion on the sufficiency of an identical complaint filed in a different action," much less the sufficiency of a *different* complaint.). In *Schor*, for example, the second court granted the defendant's motion to dismiss, notwithstanding the first court's denial of the same defendant's motion to dismiss in a case involving "identical facts and alleg[ing] identical legal theories," because the second court disagreed with—and was not bound by—the first court's application of applicable law. 378 F. Supp. 2d at 853 and n.2.

The SEC misstates the Sixth Circuit's holding in *Birgel v. Board of Commissioners of Butler County, Ohio*, 125 F.3d 948 (6th Cir. 1997), in an attempt to support its incorrect "res judicata" theory. That case addressed whether a "federal court was bound to apply the decisions

of the state appellate court," a different question involving federalism and state law issues that are not relevant here. *Id.* at 951. Moreover, *Birgel* did not even involve the denial of a motion to dismiss. Rather, the state appellate court affirmed the dismissal of the plaintiff's contract claim, holding that both the "pleadings and proofs were insufficient." *Id.* at 952. Subsequently, the Sixth Circuit held the plaintiff could not reassert that claim in federal court because the state appellate court's ruling was "'sufficiently firm'" and "conclusive[]." *Id.*

*American Postal Workers Union Columbus Area Local AFL-CIO v. United States Postal Service*, 736 F.2d 317, 318 (6th Cir. 1984), is also inapposite. There the Sixth Circuit considered whether an order *granting* a motion to dismiss and the subsequent judgment were entitled to preclusive effect. The distinction is critical. In contrast to orders denying motions to dismiss, the "general rule" is that "dismissal for failure to state a claim precludes a second action that presents the same claim through a better complaint." *Wright & Miller*, 18A Fed. Prac. & Proc. Juris. § 4439 (3d ed.)  That is because, "[h]aving brought suit, the plaintiff should be prepared to plead a valid claim, to persuade the court that amendment should be granted, to demonstrate valid reasons for dismissal without prejudice to a second action, or be barred." *Id.* None of that applies where, as here, a motion to dismiss an earlier suit was denied.

Indeed, the SEC does not cite any case that gave preclusive effect to an order denying a motion to dismiss for failure to state a claim. The cases it does cite are far off point. In *United States v. Bogart*, 2014 WL 7507260, (M.D. Pa. Dec. 8, 2014), a magistrate judge found that res judicata applied because the defendants previously had *summary judgment* entered against them and thus the relevant issues had been "determined by a final and valid judgment." *Bogart*, 2014 WL 7507260, at *1, 5. And in *GMAC Inc. v. Sullivan*, 2009 WL 10670871, (M.D. Fla. Nov. 23,

2009), a magistrate judge merely precluded a defendant "from relitigating the venue issue" that already had been "decided on the merits." *Id.* at *4.

Chief Judge Marbley's opinion in *In re FirstEnergy* is also not binding here because the allegations before him were markedly different than those in this case. Indeed, the plaintiffs in *FirstEnergy* alleged dozens more purportedly misleading statements and a broader range of conduct against more than forty defendants over a multi-year period. 2022 WL 681320, at *1-4. Indeed, the *FirstEnergy* complaint included alleged conduct relating to a public official not even mentioned in the SEC's complaint. *Id.* at *3.

In these circumstances, this Court should perform its own Rule 12(b)(6) analysis of the specific allegations of the much narrower complaint in this case. *See Wright & Miller,* 18A Fed. Prac. & Proc. Juris. § 4439 (3d ed.) ("[T]he second court has an interest in protecting itself against litigating an action on a complaint that fails to state a claim."). The SEC has elected to proceed on far narrower claims, challenging just a handful of statements made by Mr. Jones over a two-day period immediately following the public announcement of the Householder indictment. The SEC cannot evade the threshold requirement that it adequately plead the claims it has chosen to pursue. A Rule 12(b)(6) motion to dismiss "is a test of the plaintiff's cause of action *as stated in the complaint*"—not as differently stated in someone else's complaint involving different allegations. *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005) (emphasis added).

## II.      The SEC Cannot Rely On FirstEnergy's DPA

Though it made no reference to FirstEnergy's DPA in its complaint, the SEC now contends the Court should rely on this document, which the SEC improperly attached to its opposition brief. (Opp. at PageID 162–64.) It is "black-letter law" that a "court may not … take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)." *Bates v. Green Farms Condo. Ass'n*, 958

F.3d 470, 483 (6th Cir. 2020) (quotation and citations omitted). Equally, "[p]laintiffs cannot … amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Id.*

The SEC cannot avoid these black-letter rules by asking for judicial notice. *See Doe v. Currey Ingram Acad.*, 721 F. Supp. 3d 682, 690–91 (M.D. Tenn. 2024) ("To be clear, the problem is not that the Court does not deem Exhibit B a public record of which it could take judicial notice. … The problem, rather, is that the facts reflected in Exhibit B, and correspondingly asserted in the Response [to the Motion to Dismiss], were not alleged in the Complaint; they therefore cannot serve as the underlying factual matter to support the facial plausibility of Plaintiffs' legal theory."); *O'Connor v. Kazimer*, 2021 WL 12303538, at *3 (N.D. Ohio June 21, 2021) ("[T]he court shouldn't consider such [public records] documents to the extent they're offered to supplement deficient pleadings with new facts that weren't raised.").

Moreover, the purported facts and conclusions set forth in the DPA are, to put it mildly, "subject to reasonable dispute," putting them beyond the bounds of judicial notice. *See Jergens v. State Dep't of Rehab. & Corr. Adult Parole Auth.,* 492 F. App'x 567, 569 (6th Cir. 2012) (rejecting judicial notice on this ground).

The fact that FirstEnergy chose to pay money in exchange for avoiding federal prosecution does not mean Mr. Jones committed bribery or securities fraud. Indeed, for multiple constitutional and evidentiary reasons, courts routinely prevent the government from relying on evidence of an alleged co-conspirator's confession or guilty plea to establish a defendant's culpability—including where, as here, the SEC asks for judicial notice of an executive's guilty plea to support securities fraud claims against a former CEO. *See SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1328–29 (N.D. Ala. 2003) ("[T]he statements in the plea colloquies implicating 'the then CEO' are

inadmissible hearsay and thus cannot be considered by this court for the truth of the matter asserted"; "The statements against the 'then CEO' were made pursuant to a plea agreement that served to substantially reduce the pleader's criminal liability and thus provides no great indicia of reliability."); *Lilly v. Virginia*, 527 U.S. 116, 137 (1999) ("It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when … the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing."); *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) ("[T]he guilty plea or conviction of a … co-conspirator is not admissible at trial, and such guilty pleas and convictions are never admissible as substantive evidence of the defendant's guilt.").

Judge Marbley himself recognized that "only FirstEnergy was a party to the DPA, so the admissions therein are of lesser value against the Individual Defendants." *In re FirstEnergy*, 2022 WL 681320, at *4 n.11 (S.D. Ohio Mar. 7, 2022). If anything, that observation overstates the DPA's probative value here.

In fact, discovery in the class action has shed light on how profoundly unreliable and disputable the DPA is for any purpose relating to the SEC's claims against Mr. Jones. For example, the executive who signed the DPA for FirstEnergy testified he has no personal knowledge of the DPA's purported "statement of facts," signed the document because he was "instructed" to do so, and has no idea whether Mr. Jones participated in bribing any public official. (Strah Dep. 123:14–17; 124:1–3, 312:20–21.)[1] The executive also acknowledged that signing the DPA "brought

---

[1] To be clear, Mr. Jones refers to the materials cited in this paragraph only to demonstrate that the DPA is "subject to reasonable dispute" and thus ineligible for judicial notice. *Jergens*, 492 F. App'x at 569. Mr. Jones does not rely on these materials to support dismissal of the complaint. In the event the Court wishes to review them, the full deposition transcript and exhibit are publicly available at https://www.documentcloud.org/documents/25023001-fe_puco_0007044-strah-depo-

greater certainty around the financial performance of the company." (*Id.* at 113:21–23.) An internal FirstEnergy presentation shows the company had determined that entering into the DPA was the only way to avoid disastrous financial consequences, because an indictment of the company would trigger bank defaults resulting in the acceleration of billions of dollars in debt repayment. (Ex. JD 25, "Treasury Update" at 3.) The presentation concluded: "Final agreement with DOJ is our best chance for achieving waiver, extension, and preserving access to liquidity … All other scenarios come with varying degrees of uncertainty on whether we can obtain waiver and/or successfully extend credit facilities." (*Id.*)

There is much reason to question FirstEnergy's motives in entering into the DPA and the admissions it made in that agreement. Accordingly, judicial notice would be improper.

### III.  The SEC Fails to Allege Securities Fraud (Counts I and II)

#### A.  The SEC Does Not Allege A False Or Misleading Statement

##### *Opinion Statements Concerning Legality of Conduct*

The SEC challenges Mr. Jones's statements expressing his belief that FirstEnergy acted "ethically," "properly," and "professionally," and "let the merits of our arguments carry the day." (Opp. at PageID 156–64, 166.)

The SEC argues these statements were misleading because Mr. Jones knew "'the Federal Government was taking the opposite view.'" (Opp. at PageID 159–60 (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Ind. Pension Fund*, 575 U.S. 175, 188–89 (2015)).) But Mr. Jones

---

transcript-vol-i-fe-securities-litigation-92123/#document/p1 (Volume I) and https://www.documentcloud.org/documents/25023008-fe_puco_0007527-strah-depo-transcript-vol-ii-fe-securities-litigation-92123/#document/p1 (Volume II). *See also* Jake Zuckerman, *An ousted FirstEnergy CEO signed a deal blaming his mentor for a bribery scheme. He said the feds never talked to him*, Cleveland.com (Aug. 1, 2024, 1:05 PM), https://www.cleveland.com/open/2024/08/an-ousted-firstenergy-ceo-signed-a-deal-blaming-his-mentor-for-a-bribery-scheme-he-said-the-feds-never-talked-to-him.html.

was not the only one who knew this—it was public information. Indeed, *Omnicare* makes clear, in relevant part, that an opinion statement is not misleading unless a reasonable investor would interpret the statement as implying facts and the "real facts are otherwise, *but not provided*." 575 U.S. at 188 (emphasis added); *see also Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020) ("[W]hen a statement of opinion implies facts or the absence of contrary facts, and the speaker knows or reasonably should know of different material facts that were omitted, liability under Rule 10b-5 may follow.").

Mr. Jones clearly was not concealing the fact that "the federal government was taking the opposite view." That information was publicly known at the time of Mr. Jones's challenged statements. As the SEC acknowledges, the alleged bribery scheme was "detailed in the indictment DOJ unsealed two days before the July 24 earnings call" at issue, and the indictment included "detailed allegations of FirstEnergy's [allegedly] corrupt dark money payments." (Opp. at PageID 158, 160.) FirstEnergy's July 23 press release referred to the ongoing "Department of Justice investigation" concerning HB6. (ECF No. 17-1 at PageID 248.) In fact, the July 24 earnings call was almost entirely focused on Mr. Householder's public indictment, the DOJ investigation, and DOJ's allegations concerning FirstEnergy's alleged bribe payments. (ECF No. 11-1 at PageID 61–75.)

Unlike the hypothetical in *Omnicare* that the SEC relies upon, a reasonable investor would not interpret Mr. Jones's statements as misleadingly implying the absence of a DOJ investigation or governmental allegations of wrongdoing. As the Supreme Court recognized, a "reasonable investor understands a statement of opinion in its full context," which here included DOJ's detailed allegations purporting to implicate FirstEnergy in a bribery scheme. *Omnicare,* 575 U.S. at 190–91. And the Supreme Court instructed that, in determining on remand whether Omnicare's opinion

8

statements concerning legal compliance were misleading, "[t]he court should consider" such context as Omnicare's disclosures that the "Federal Government had expressed concerns about the practice" at issue. *Id.* at 196–97.

Applying these principles from *Omnicare*, courts have held that opinion statements expressing a belief that the speaker has complied with the law are not misleading where, as here, the existence of investigations or litigation alleging illegal conduct were disclosed or publicly known. *See, e.g., Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*, 2018 WL 4616356, at *5 (N.D. Ill. Sept. 26, 2018) ("Caterpillar's statements that it is complying with the law … are statements of opinion that are put in context by Caterpillar's accompanying disclosures regarding the ongoing IRS examination of tax records [and] the Grand Jury subpoena"; "In this context, a reasonable investor is not likely to find the statements misleading unless they ignore those disclosures."); *Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 225 (E.D. Pa. 2021) (opinion statement that company "has not engaged in any form of criminal activity" in face of disclosed "investigations or litigation" were "protected under *Omnicare*").

The SEC's cited cases do not hold otherwise. In *SEC v. Ustian*, 229 F. Supp. 3d 739, 770 (N.D. Ill. 2017), opinion statements expressing optimism concerning certification of a prototype engine were misleading because the defendant allegedly "knew"—but did not disclose—"that four days earlier the EPA told Navistar that it would not certify such an engine." *See also Padilla v. Cmty. Health Sys., Inc.*, 2022 WL 3452318, at *24 (M.D. Tenn. Aug. 17, 2022) (opinion statement that company was "in good shape" was misleading because it omitted undisclosed fact that company "would be in default . . . if it recorded the full amount of its 'bad debt' expense"); *USM Holdings Inc. v. Simon*, 2016 WL 4396061, at *12 (E.D. Mich. Aug. 18, 2016) (statement that defendants "had no knowledge of any intention by AAM to materially alter its business

relationship" was misleading because it omitted an undisclosed "internal analysis … show[ing] that AAM's proposed changes to their relationship would result in USM's earnings being reduced by $25.5 million over five years").

### Statements Concerning FES

The SEC also challenges Mr. Jones's statement, in answering an analyst's question, that "from November '16, I've had no input into any of the decisions [FES] made." (Opp. at PageID 164.) The SEC claims this statement was misleading because "Jones repeatedly pressured FES to make 501(c)(4) payments—the precise focus of the analyst's question." (*Id.*)

But the analyst did *not* ask Mr. Jones whether he "pressured" FES to make payments; rather, the analyst asked whether Mr. Jones had "any *control* over FES payments." (ECF No. 11-1 at PageID 65.) Mr. Jones truthfully answered that question in the negative.

Mr. Jones's answer was not misleading because he did not control FES's political spending. At the relevant time, FES had separate management and a separate board vested with decision-making authority. (Compl. ¶ 13.) The SEC does not (and cannot) allege otherwise. Merely alleging that Mr. Jones "pressured" FES to take actions, without alleging any facts suggesting he had the leverage or authority to make it happen or actually participated in FES board or executive decisions, does not establish that Mr. Jones had "input" into FES's decision-making or "control over FES payments." (*See* Opp. at PageID 163–64.)

Indeed, in portions of the earnings call that the SEC has omitted from the complaint, Mr. Jones made clear his "decision-making authority" with respect to FES "ended in November of 2016." (ECF No. 11-1 at PageID 65.) And Mr. Jones contrasted his "decision-making authority" with informal "discussions between the [two] companies," which remained ongoing. (*Id.*) In context, a reasonable investor would understand the totality of Mr. Jones's statements on this

10

subject to mean he did not control FES's political contributions, not that he never discussed the topic with FES or encouraged FES to make contributions.

### *Statements Concerning FirstEnergy Acting "Transparently"*

The SEC also contends Mr. Jones's "insistence that FirstEnergy acted 'transparently' was effectively a denial of the existence of the surreptitious payments to Householder's dark money entities." (Opp. at PageID 167.) In this characterization of Mr. Jones's statement, the SEC quotes only the single word "transparently" from the entire July 24 earnings call. Mr. Jones's actual statement—that "I've talked about our obligations to conduct our business transparently"—was far too general to be taken by a reasonable investor as denying that FirstEnergy made the 501(c)(4) contributions detailed in the DOJ indictment. (ECF No. 11-1 at PageID 65.)

Here again, the context of Mr. Jones's statement is significant. Any reasonable investor listening to the earnings call would understand that Mr. Jones was not denying that FirstEnergy made the alleged 501(c)(4) contributions. To the contrary, Mr. Jones stated that "of the funds that are referenced in the Department of Justice affidavit, FirstEnergy's share of that is about 25%" and that "a lot of money being spent on both sides and 501(c)(4)s were used on both sides." (*Id.*) In context, Mr. Jones was acknowledging that FirstEnergy made the 501(c)(4) contributions and, again, expressing his belief that FirstEnergy had not acted improperly in doing so.

The SEC incorrectly asserts that Mr. Jones acknowledged only the "***existence*** of the [DOJ] affidavit and its contents." (Opp. at PageID 169 (emphasis in original).) When Mr. Jones said that "501(c)(4)s were used on both sides," that clearly included FirstEnergy—in the earnings call, Mr. Jones confirmed that FirstEnergy was on the side of being a "strong supporter[] of House Bill 6 and opposed the referendum to repeal it." (Mot. at PageID 105–06; ECF No. 11-1 at PageID 62.).

If that were not enough, Mr. Jones further stated that "we intend to provide the details on what we spent." (ECF No. 11-1 at PageID 65.) That is the opposite of denying the alleged contributions.

The SEC attempts to dismiss Mr. Jones's analysis of the challenged statements in light of context ignored by the SEC as "spin [for] the jury." (Opp. at PageID 167.) But securities fraud claims are subject to dismissal when the challenged statements would not be misleading in context to a reasonable investor—an objective standard that courts routinely apply as a matter of law. *E.g.*, *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (affirming dismissal because "reasonable investor would not view" challenged statements "as significantly changing the general gist of available information").

### B.  The SEC Fails to Allege the Underlying Bribery Scheme

The SEC's securities fraud claims also fail because the SEC has failed to demonstrate the particularity required by Rule 9(b) that Mr. Jones participated in or knew about an undisclosed bribery scheme. (Mot. at PageID 98–103.) The SEC contends the "complaint details overwhelming evidence specifically about Jones's knowledge, statements, and active participation in the scheme." (*See* Opp. at PageID 157–58.) In support, however, the SEC merely points to allegations that:

- At various times over a three-year period, Mr. Jones "discuss[ed]" the 501(c)(4) entity "Generation Now," the "Speakership race," and a "ballot initiative" with Mr. Householder (Opp. at PageID 157–58 (citing Compl. ¶¶ 25, 26, 37));

- Mr. Jones and/or unnamed individual(s) at FirstEnergy somehow "caused" or "directed" Partners for Progress to make several contributions to Generation Now, sometimes within "days" after Mr. Jones and Mr. Householder "met" or "discuss[ed]" some topic (*Id.* (citing Compl. ¶¶ 26, 27, 35, 38));

- "Days" prior to one such contribution, an unnamed FirstEnergy executive confirmed to Mr. Jones that Mr. Householder, a politician in an election cycle, was "looking for more money" (*Id.* at PageID 157 (citing Compl. ¶ 27));

- Mr. Jones "urged" FES to make a contribution to Generation Now in time for it to be used in the current election cycle, and Mr. Householder thanked Mr. Jones after FES made a contribution (*Id.* at PageID 157–58 (citing Compl. ¶ 29));

- Mr. Jones was happy when HB6 was signed into law and texted an unnamed FirstEnergy executive that "We made a bbiiiiiiiig bet and it paid off" (*Id.* at PageID 158 (citing Compl. ¶ 33)); and

- Mr. Jones once jokingly (as denoted by a laughing-face emoji) referred to Mr. Householder as an "expensive friend" in a text message following a fundraising request from Mr. Householder relating to a ballot initiative (*Id.* (citing Compl. ¶ 37)).

The SEC's complaint contains no specific, non-conclusory allegations that establish the existence of a quid quo pro agreement, which is a necessary element of any bribery scheme. Discussing political topics with a politician is not illegal. Nor is making contributions to 501(c)(4) entities. Urging others to make political contributions is also not illegal (and, indeed, the fact that Mr. Jones had to "urge[]" FES to make a contribution undercuts the SEC's suggestion that Mr. Jones controlled FES or its political spending). Describing support for like-minded candidates and causes as a "big bet" in a moment of excitement is not evidence of bribery. Nor does describing a politician who frequently makes fundraising calls as an "expensive friend" suggest the existence of a quid pro quo agreement. Making donations to support the campaign of a candidate whose policy goals match the donor's hardly make those donations bribery.

13

Crucially, these alleged facts do not plausibly establish that contributions to Generation Now, a nonprofit issue advocacy group, were intended by anyone to be payments *to Mr. Householder*, much less that Mr. Jones intended or knew that to be the case. (*See* Opp. at PageID 157–58.) Nor do these facts establish that Mr. Householder agreed to take official action in exchange for receiving payments. (*See id.*) To the contrary, the SEC's allegations show that FirstEnergy's contributions were used for permissible activities, including advertising supporting passage of HB6 and opposing its repeal, among other things. (*Id.* at PageID 153, 157–58.)

The SEC contends its failure to allege a quid pro quo agreement is a "red herring" because all that matters is the "***very fact***" that "FirstEnergy funneled" money to Mr. Householder "through dark money c4 entities." (Opp. at PageID 161 (emphasis in original).) But, again, the SEC fails to allege that FirstEnergy—much less Mr. Jones—intended to make payments *to Mr. Householder* at all. Moreover, in the absence of a quid pro quo agreement, the SEC has not alleged the existence of undisclosed illegal conduct to support its claims. Pejoratively labeling contributions that are not required by law to be disclosed as "secret," "covert," or "funneled" adds nothing to the sufficiency of the SEC's deficient complaint. (*See id.* at PageID 152, 171.)

The SEC's failure to allege Mr. Jones's purported involvement in, or knowledge of, an undisclosed bribery scheme is fatal not only to Counts 1 and II, but to the entire complaint. (Mot. at PageID 98–103.)

### C.    The SEC Fails to Plead Scienter

The SEC does not cite a single allegation from its own complaint in its four-page discussion of scienter. (Opp. at PageID 171–75.) Instead, the SEC relies on Judge Marbley's scienter analysis, much of which was not specific to Mr. Jones. (*See id.* at PageID 172–74 (quoting Judge Marbley's order at length before reaching "Jones-specific allegations") (emphasis omitted).) Rather, Judge Marbley considered allegations against FirstEnergy and eleven individual defendants. *In re*

14

*FirstEnergy*, 2022 WL 681320, at *18–24. And these allegations differed greatly from what the SEC alleges here. For example, the plaintiffs alleged (incorrectly) that Mr. Jones had "engaged in suspicious stock trading"—something not alleged here. *Id.* at *22. They also challenged numerous statements predating the Householder indictment—statements the SEC does not challenge here.

The SEC also cites *SEC v. Jacoby*, 2021 WL 351176, at *14 (D. Md. Feb. 2, 2021), for the proposition that "Rule 10b-5 'does not require proving an intent to deceive any specific person or group." That is not an accurate statement of law. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (scienter requires "intentional or willful conduct designed to deceive or defraud investors"); *Adams v. Standard Knitting Mills*, 623 F.2d 422, 428 (6th Cir. 1980) (same); *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 535 (9th Cir. 2024) (same); *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 423 (S.D.N.Y. 2007) (same). Because the SEC fails to allege that Mr. Jones intended to deceive anyone, much less FirstEnergy's investors, Counts I and II should be dismissed.

### D.    The SEC Fails to Plead Scheme Liability

The SEC acknowledges that pleading scheme liability requires "alleging facts establishing (1) that Jones committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud." (Opp. at PageID 169 (citing *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 525 (6th Cir. 2023)). But the SEC is wrong about what counts as a "deceptive or manipulative act."

The "deceptive or manipulative act" element, adopted by the Sixth Circuit, comes from the Second Circuit. *See Teamsters Loc. 237 Welfare Fund*, 83 F.4th at 525 (declining to "define[] the elements required to state a claim for scheme liability" and following Second Circuit approach). The Second Circuit has held, "misstatements and omissions alone are not enough." *SEC v. Rio Tinto PLC*, 41 F.4th 47, 54 (2d Cir. 2022). Yet that is precisely what the SEC's scheme-liability theory boils down to—"dark money payments" constituting the alleged "scheme" and Mr. Jones's

statements as the allegedly deceptive acts in furtherance. (Opp. at PageID 171.) Scheme liability requires something "*beyond* misstatements and omissions"; otherwise, the "scheme subsections" of the securities laws "swallow the misstatement subsections." *Rio Tinto*, 41 F.4th at 49, 54.

The Supreme Court's decision in *Lorenzo v. SEC*, 587 U.S. 71 (2019), "did not announce a rule contravening this principle." *Id.* at 55. Instead, in analyzing facts where the defendant was not the "maker" of misleading statements, the Court held that "dissemination of false or misleading statements with intent to defraud" can give rise to scheme liability. *Lorenzo*, 587 U.S. at 78. Here, the SEC alleges Mr. Jones *made* the statements. Under the securities laws, making and disseminating statements are distinct acts. *In re CarLotz, Inc. SEC. Litig.*, 2024 WL 3924708, at *4 (S.D.N.Y. Aug. 23, 2024) (dissemination "does not include sending one's own false statements to prospective investors"); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 248–49 (S.D.N.Y. 2022) ("Where the only fraudulent conduct that is alleged is the making of a false statement to the investing public, a defendant in a private civil action is either liable as a maker under Rule 10b-5(b) or is not liable to investors at all."). The SEC therefore "overread[s] *Lorenzo*"—just as it did in *Rio Tinto*. *See* 41 F.4th at 55.

To the extent the SEC means to suggest its bribery allegations satisfy the "deceptive or manipulative act" element, that also fails. (Opp. at PageID 177–78.) Even if the SEC had adequately alleged bribery, such conduct would not be sufficiently deceptive *to investors* to support scheme liability. *Eden Alpha CI LLP v. Polished.com Inc.*, 2025 WL 296998, at *30 (E.D.N.Y. Jan. 24, 2025) (dismissing scheme-liability claim; "purported acts of fraud" did not "establish a deceptive scheme to defraud *investors*"); *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 519 (S.D.N.Y. 2017) ("underlying bribery [was] not a proper basis for a scheme liability claim" because it did not relate to purchase or sale of securities).

The SEC also fails to identify any factual allegations establishing the alleged "scheme" was either "in connection with the purchase or sale" of securities under Section 10(b) and Rule 10b-5 or "in the offer or sale" or securities under Section 17(a). The SEC highlights paragraphs 12, 54, and 65 of the complaint, but these paragraphs, in relevant part, allege only that FirstEnergy's stock is publicly traded, that the 501(c)(4) contributions and Mr. Jones's supposed "misrepresentations and omissions about them[] would have been important to FirstEnergy's investors," and that FirstEnergy "awarded" Mr. Jones "share-based compensation" and "performance-adjusted restricted stock units." (Opp. at PageID 179–81.) Fatally missing are allegations of "market activity" or "market manipulation," *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95 (2d Cir. 2022) (Section 10(b) and Rule 10(b)(5)), or that any fraud occurred "directly in the offer or sale of securities," *SEC v. Warner*, 652 F. Supp. 647, 650 (S.D. Fla. 1987) (Section 17(a)). Indeed, the SEC does not allege that an offer or sale of securities regulated under Section 17(a) occurred, an essential element of a Section 17(a) claim. *SEC v. Brown*, 740 F. Supp. 2d 148, 163–64 (D.D.C. 2010) ("The SEC has failed to cite, and this Court has failed to identify, any precedent holding that a complaint may properly state a claim under § 17(a) when it fails to allege that an offer or sale of securities ever occurred.").[2]

The SEC incorrectly relies on *SEC v. Sequential Brands Grp., Inc.*, 2021 WL 4482215 (S.D.N.Y. Sept. 30, 2021), to argue that it "easily clears this low bar" for alleging this element. (Opp. at PageID 181.). But there, the SEC alleged the defendant "issue[d] stock as part of an employee benefit plan" and "issued restricted stock units and performance stock units" to "employees and third-party consultants." *Sequential Brands*, 2021 WL 4482215, at *5. Here, by

---

[2] The Securities Act governs public offerings of securities and related disclosure requirements, as opposed to routine secondary market trades, which are addressed by the Securities Exchange Act of 1934. 79A C.J.S. Securities Regulation § 5.

contrast, the SEC alleges only that FirstEnergy issued stock to *Mr. Jones* (Compl. ¶ 65)—who could not have been deceived by his own purported "scheme."

Again improperly reaching beyond its complaint, the SEC relies on an accountant's declaration that "FirstEnergy's stock price plummeted 34%" following the Householder indictment. (Opp. at PageID 178.) Even if this fact were properly before the Court, it does not establish a "purchase or sale" or "offer or sale" of securities.

### E.    The SEC Does Not Plead A Material Omission Theory

The SEC argues that "corporations are … obligated to disclose facts necessary to ensure that their statements are not misleading." (Opp. at PageID 175 (quoting Judge Marbley's order).) This misses the point. For reasons already discussed, the SEC has not alleged a misleading statement requiring additional disclosure. The SEC's argument fails to respond to Mr. Jones's point that the SEC also has not alleged "any *other* source of a duty to disclose the purported bribery scheme," and thus does not plead a "material omission theory." (Mot. at PageID 107 (emphasis added).)

The SEC's citation to Judge Marbley's decisions adds nothing to the SEC's argument because Judge Marbley analyzed complaints that, unlike here, involved allegations of misleading statements predating DOJ's public disclosure of the Householder indictment.

### IV.    The Court Should Apply Rule 13a-14 As Written and Dismiss Count III

The SEC's opposition brief ignores the text of Rule 13a-14. In relevant part, Rule 13a-14 provides as follows:

> Each report, including … Form 10-K … must include certifications in the form specified in the applicable exhibit filing requirements of such report and such certifications must be filed as an exhibit to such report. Each principal executive and principal financial officer of the issuer, or persons performing similar functions, at the time of filing of the report must sign a certification.

17 C.F.R. § 240.13a-14(a).

The SEC does not allege that Mr. Jones failed to sign a required certification. Because Rule 13a-14 requires nothing more, the Court should dismiss Count III.

The SEC claims that applying Rule 13a-14 as written would render the rule "toothless." (Opp. at PageID 182.) It argues Mr. Jones "violated" Rule 13a-14 by signing a certification that allegedly turned out to be inaccurate. (*Id.* at PageID 182–83.) But the SEC did not hold this atextual view of Rule 13a-14 in 2002, when it promulgated the rule. The SEC then believed that signers of false certifications "already" faced liability under the securities laws, including Section 10(b) and Rule 10b-5. Certification of Disclosure in Companies' Quarterly & Annual Reports, Release No. 8124, 2002 WL 31720215, at *9 (Aug. 28, 2002). Rule 13a-14's innovation, the SEC explained, was to impose a certification requirement; the SEC did not suggest that it also created an antifraud provision specific to certifications. *Id.* at *3–4, 9.

Ignoring this history, the SEC focuses on *SEC v. Jensen*, 835 F.3d 1100 (9th Cir. 2016), in which the Ninth Circuit read an "implicit truthfulness requirement" into Rule 13a-14. *Id.* at 1113. This Court is not bound by the Ninth Circuit's decision, and Mr. Jones respectfully submits that the Court should not repeat the Ninth Circuit's error of "add[ing] words to the law to produce what is thought to be a desirable result." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). Moreover, because signers of false certifications already face liability under the securities laws where applicable, no such judicially created requirement is necessary to effectuate Rule 13a-14's purpose.

The SEC's other cited cases stand only for proposition that the "SEC has authority to bring an enforcement action under Rule 13a-14." *E.g.*, *SEC v. Geswein*, 2011 WL 4541303, at *3 (N.D. Ohio Sept. 29, 2011). Whether Rule 13a-14 proscribes "false" certifications is a separate question. *Jensen*, the only case cited by the SEC that analyzes that question, is neither binding nor correct.

## V.     The SEC Fails to Adequately Plead Count IV

The SEC inaccurately characterizes Mr. Jones's Count IV argument as seeking dismissal because the complaint lacks "a full accounting analysis." (Opp. at PageID 185.) In truth, the SEC's Rule 13b2-2 claim fails because the SEC fails to allege facts establishing the falsity of Mr. Jones's statement to FirstEnergy's auditor.

The SEC challenges the following statement in a letter accompanying FirstEnergy's 2019 financial statements: "There have been no violations or possible violations of laws or regulations whose effects should be considered for disclosure in the consolidated financial statements or as a basis for recording a loss contingency." (Compl. ¶ 59.) For this statement to be false, there must have been (1) a "violation[] or possible violation[] of laws or regulations" with (2) "effects" that warranted "disclosure" or "recording a loss contingency." The SEC fails to allege facts establishing either point.

As already discussed, the SEC does not adequately allege a bribery scheme; it thus does not establish a "violation[] or possible violation[] of laws or regulations." The SEC also fails to allege facts showing that Partners for Progress was a "related party" under ASC 850—the entire premise of the SEC's theory that FirstEnergy's contributions to Partners for Progress required disclosure. (Compl. ¶ 60.)

The SEC's contention that it should not be required to allege "granular accounting backup" misses the point. (Opp. at PageID 185.) What is missing from the SEC's complaint are allegations establishing the essential fact under ASC 850 that Partners for Progress was a "related party," which is the bare minimum that *Twombly* and Rule 9(b) require.

The cases cited by the SEC do not suggest that a lesser pleading standard applies. In *SEC v. Taronis Techs., Inc.*, 2023 WL 5625299 (M.D. Fla. Aug. 31, 2023), for example, the SEC charged the defendant with submitting "fake and backdated purchase orders … to the outside

20

auditor"—a far cry from Mr. Jones's boilerplate statement to the auditor here. *Id.* at \*10. Similarly, in *SEC v. Geswein*, 2011 WL 4565898 (N.D. Ohio Aug. 5, 2011), the defendant allegedly used "false figures" to misrepresent his company's "revenues and earnings" to an auditor. *Id.* at \*23. That the SEC purportedly alleged the falsity of *these* statements says nothing about whether it has sufficiently alleged the falsity of Mr. Jones's statement. And although a defendant's alleged non-disclosure of related-party transactions was the focus of the Rule 13b2-2 claim in *SEC v. Das*, 2010 WL 4615336 (D. Neb. Nov. 4, 2010), there was no dispute in that case concerning the related party's status as a related party, and the court thus had no occasion to address what the SEC must allege to establish that an entity qualifies as a related party under ASC 850. *Id.* at \*10.

Finally, the SEC points to the complaint's conclusory assertion that Mr. Jones "funnel[ed] money to Householder" to contend that it sufficiently alleges scienter under Rule 13b2-2. (Opp. at PageID 185 (citing Compl. ¶ 81).) But, as discussed above, that assertion does not establish that Mr. Jones participated in or knew about any bribery scheme. The SEC's failure to plead scienter independently dooms Count IV. *SEC v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011) (scienter required for Rule 13b2-2 claim); *but see SEC v. Das*, 723 F.3d 943, 954–96 (8th Cir. 2013) (scienter not required).

## VI. The SEC's Aiding and Abetting Counts Fail

The SEC does not dispute that Count V is based on just two sentences of a press release in which Mr. Jones, addressing the recently unsealed criminal complaint against Householder, stated his belief that "FirstEnergy acted ethically." (Opp. at PageID 186.) According to the SEC, because FirstEnergy filed this press release with the SEC, Mr. Jones aided and abetted FirstEnergy's violation of Exchange Act Section 13(a) and Rules 12b-20 and 13a-11, which prohibit "misleading" filings. 17 C.F.R. § 240.12b-20. The problem with this theory is the same problem that afflicts Counts I and II: the SEC does not allege facts establishing that Mr. Jones's statement

was misleading. Accordingly, the SEC cannot establish that FirstEnergy violated any securities law when it filed the press release, which is fatal to Count V.

Nor does the SEC articulate a workable theory for Count VI. It fails to identify any factual allegations about the "system of internal accounting controls" that FirstEnergy had in place during the relevant period. 15 U.S.C. § 78m(b)(2)(B). Instead, the SEC cites allegations simply assuming that FirstEnergy's internal accounting controls must have been deficient because the payments to Partners for Progress occurred. (Opp. at PageID 187.) The SEC also fails to explain how such payments—which allegedly were approved by FirstEnergy's CEO—were not "executed in accordance with management's general or specific authorization," or how they were improperly recorded pursuant to GAAP. 15 U.S.C. § 78m(b)(2)(B)(i), (ii). The SEC's claim under Section 13(b)(2)(B) therefore also warrants dismissal.

## CONCLUSION

The Court should dismiss the complaint.


Dated: February 20, 2025                    Respectfully submitted,


                                            /s/ Carole S. Rendon
                                            Carole S. Rendon (0070345)
                                            Daniel R. Warren (0054595)
                                            Douglas L. Shively (0094065)
                                            Rachael L. Israel (0072772)
                                            Tera N. Coleman (0090544)
                                            BAKER & HOSTETLER LLP
                                            127 Public Square, Suite 2000
                                            Cleveland, OH 44114
                                            Telephone: 216-621-0200
                                            Facsimile: 216-696-0740
                                            Email: crendon@bakerlaw.com
                                            Email: dwarren@bakerlaw.com
                                            Email: dshively@bakerlaw.com
                                            Email: risrael@bakerlaw.com
                                            Email: tcoleman@bakerlaw.com

Jonathan R. Barr (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 1100
Washington, D.C. 20036
Telephone: 202-861-1500
Facsimile: 202-861-1783
Email: jbarr@bakerlaw.com

*Attorneys for Defendant Charles E. Jones*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed with this Court's

electronic filing system on February 20, 2025, which will provide notice to all counsel of record.


*/s/ Carole S. Rendon*
*One of the Attorneys for Defendant Charles E.*
*Jones*